Argued October 27, affirmed December 8, 1972

IN THE MATTER OF THE ESTATE OF HOWARD L. TOPNESS,
DECEASED.

BOSE, *Respondent, v.* BOSE, *Appellant.*

503 P2d 1259

*Harrison M. Weatherford,* Albany, argued the cause for appellant. With him on the briefs were Weatherford, Thompson, Horton & Jordan, P.C., Albany.

*Peter L. Barnhisel,* Corvallis, argued the cause for respondent. On the brief were Fenner & Barnhisel, Corvallis.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

This probate matter comes before the court on appeal from an order overruling objections of appellant to the final account of respondent, its designation of heirship and ordering distribution of the estate in accordance therewith.

The Howard Topness family consisted of Howard Topness, his wife Clara Bose Topness, and their minor daughter Tina Topness, age nine. The family resided in Corvallis, Oregon, where Mr. Topness was employed as a company accountant. Mrs. Topness had been employed at Oregon State University but had left her employment there several years prior to devote her time to being a housewife. The family left Corvallis on a vacation trip in July 1970, and on August 1, 1970, while traveling in Nevada, were all killed in a head-on automobile collision. Clara Topness, the driver, was killed instantly, Howard Topness survived a short time and expired at the scene, and Tina Topness expired last while en route to a hospital in an ambulance. Both Mr. and Mrs. Topness died intestate, and all of the property of the family was owned in survivorship titles. These included real property, bank accounts and stock certificates.

The trial court concluded that title to all the jointly owned property, being based upon survivorship contracts as distinguished from passing by intestacy, became vested in Mr. Topness at the moment of the death of his wife Clara. Mrs. Topness thus owned nothing at her death to pass by intestacy. Thus the court held that at the time of Mr. Topness's death he was the sole owner of all the jointly owned property. The child, Tina, owned no property or interest therein.

ORS 112.085 provides:

"Any person who fails to survive the decedent by five days is considered to have predeceased the decedent for all purposes of intestate succession, and the heirs of the decedent are determined accordingly."

In commenting on that statute in Administering Oregon Estates Handbook, Rules Governing Heirs §§ 7.29, 7.30 (2d ed 1972), the author states:

"Formerly there was no requirement that an heir survive decedent for a period of time in order to inherit. The Uniform Simultaneous Death Act was effective only if there was no proof that the parties died otherwise than simultaneously.

"ORS 112.085 requires that an heir survive decedent by five days in order to succeed to decedent's intestate property. If he fails to so survive, he is considered to have predeceased the decedent for all purposes of intestate succession.

"* * * * * *"

■ Appellant urges that if ORS 112.085 is valid, jointly held property would come within its purview. We disagree. The statute by its express terms applies only "for all purposes of intestate succession." Since the property did not pass by intestate succession to Mr.

Topness but by contract, the statute does not apply here.

In 48 CJS 910-11, Joint Tenancy § 1 b, the text states:

"Survivorship is the distinctive characteristic of an estate in joint tenancy. * * *

"The joint tenant who survives does not take the moiety of the other tenant from him or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created."

■ Appellant contends Oregon's five-day survival statute, ORS 112.085, is unconstitutional because, inter alia, it retroactively divested Tina's vested rights as an heir without due process of law. The rights of an heir apparent do not vest until the death of the ancestor. *In re McLeod's Estate,* 159 Or 687, 696-97, 82 P2d 884 (1938) (Lusk, J.); *Root v. Arnold,* 133 Or 417, 419-20, 290 P 1095 (1930); *In re Witherill's Estate,* 178 Or 253, 260, 166 P2d 129 (1946); *Wright v. Kroeger,* 219 Or 102, 106-08, 345 P2d 809 (1959), and cases cited therein; *Ostrander v. Preece,* 129 Ohio St 625, 3 Ohio Op 24, 196 NE 670, 103 ALR 218 (1935).

As stated in *Ostrander v. Preece,* supra, 129 Ohio St at 632:

"There are no heirs, but only heirs apparent, to the living, persons with mere expectancies or possibilities of inheritance which may be fulfilled or defeated, depending upon various contingencies and situations. An heir apparent, therefore, has no vested right in the estate of his ancestor prior to the latter's death, and consequently no vested property rights therein. Legislation dealing with estates of persons who die after its effective date does not deal with vested rights. * * *"

Howard Topness did not die until a month after

ORS 112.085 became effective on July 1, 1970. Therefore, Tina Topness, having had no present vested rights in her father's estate at the time ORS 112.085 became effective, could not have been deprived thereof.

■■ There is no merit in appellant's next contention that the definition of "heirs" in ORS 111.005 (18) is unconstitutionally vague[①] or that ORS 112.085 is an unconstitutional infringement on the right to inherit. *In re Estate of Heck,* 120 Or 80, 250 P 735 (1926).

Next, appellant contends that if the five-day survival statute is valid, then Howard Topness is not an heir of his wife Clara Topness for purposes of determining the survivorship rights in the property held jointly by them. Appellant apparently proposes that the property here should pass in the same way as in cases of simultaneous death (ORS 112.575-112.635)—"* * * one-half as if one had survived and one-half as if the other had survived. * * *" ORS 112.595 (1). By the agreed facts, the Uniform Simultaneous Death Act does not apply here, for it is conceded that the three deaths here were not simultaneous within ORS 112.575.

Although the record is not entirely clear, there were apparently three types of joint interests here involved; the home was owned in tenancy by the entirety. *Klorfine v. Cole,* 121 Or 76, 79, 252 P 708, 254 P 200 (1927). In *Wenker v. Landon,*[②] 161 Or 265, 270-71, 88 P2d 971 (1939), the court held, inter alia:

"When real property is conveyed to husband

---

[①] The definition of the term "heir" is clearly stated in ORS 111.005(18) to be limited to those persons "* * * *entitled under intestate succession* to the property of a decedent who died wholly or partially intestate." (Emphasis supplied.)

[②] Wenker v. Landon, supra, which involved the survivor rights of a spouse who feloniously caused the death of his mate was

and wife as tenants by the entirety they take but one estate, and if one spouse dies the estate continues in the survivor. Such survivor takes no new interest or estate * * *.

"* * * As to the property which she and her husband held by the entirety, here in controversy, the husband did not inherit it or any interest in it from her. Upon her death the real property owned by them as tenants by the entirety did not, nor did any interest which the wife might have had therein, become a part of her estate; and therefore George Johnson did not receive any interest in her estate as surviving spouse, in so far as concerns that realty."

*See also, In re Estate of Gilger,* 63 Ohio L Abs 595, 49 Ohio Op 50, 109 NE2d 333, 336 (1952); *In re Kaspari's Estate,* 71 NW2d 558, 564 (ND 1955); *King v. King,* 107 Cal App 2d 257, 236 P2d 912, 913 (1951); *People v. Nogarr,* 164 Cal App 2d 591, 330 P2d 858, 860, 67 ALR2d 992 (1958).

The inter vivos nature of joint ownership with right of survivorship interests in shares of stock was explained in *Bechtel v. State Tax Com.,* 228 Or 123, 126, 363 P2d 1102 (1961), where the court stated:

"The shares of stock, the sale of which was subject to the contested tax, were transferred by the seller to Harold M. Bechtel and the plaintiff, Mildred E. Bechtel, his wife, jointly, with the right of survivorship. The case comes to us upon a demurrer to the complaint and we have only the allegation that the stock was issued to the purchasers jointly with right of survivorship. Since we do not recognize a tenancy by the entirety in personal property,

reaffirmed as to the above holding but overruled on other grounds in Hargrove v. Taylor, 236 Or 451, 453-54, 389 P2d 36 (1964).

*Stout v. Van Zante,* 109 Or 430, 219 P 804, 220 P 414 (1923); *Panushka v. Panushka,* 221 Or 145, 349 P2d 461 (1960), or a joint tenancy in either real or personal property, *Halleck v. Halleck,* 216 Or 23, 337 P2d 330 (1959), the transfer created some other form of concurrent interest.

"We shall regard the transfer as creating in plaintiff and her husband concurrent life interests with a remainder in each of them contingent upon survivorship. The interest acquired by plaintiff was created by the inter vivos transfer to her and her husband, although her remainder interest was subject to the precedent condition that she survive her husband. She clearly did not acquire an interest by 'bequest' or 'devise' or 'descent.' * * *"

The nature of survivorship interests in bank accounts was discussed in *In re Edwards' Estate,* 140 Or 431, 14 P2d 274 (1932). The court concluded that a joint bank account with the right of survivorship was an inter vivos interest created by the contract with the bank, stating:

"* * * It seems evident that the wife did not obtain her rights through her husband by the process of a gift, but directly from the bank for a valuable consideration. Her right to demand whatever balance remained in the bank in the event of her survivorship was complete and beyond the power of the bank to revoke. Her interest in the balance, to be paid upon survivorship, was acquired in praesenti. Since they were obtained for a consideration and were irrevocable, they were not testamentary in character." 140 Or at 441-42.

However, regardless of how these survivorship interests may be characterized, it is clear they were created by the transactions involved and never became a part of Clara Topness's estate, since the five-day survivor statute (ORS 112.085) applies only to those

property interests which pass by intestate succession. This statute is not applicable to the various inter vivos interests here present.[9]

Next, appellant seeks to impress a resulting trust in favor of Clara Topness's estate on the above mentioned jointly held property on the ground that in the earlier years of the marriage she worked and earned substantial wages. These became part of the family funds and could not be traced into any current identifiable assets.

■■ Clear, strong and convincing evidence is required to establish a resulting trust. *Fox v. Maurer,* 178 Or 64, 85-86, 164 P2d 417 (1945), and cases cited therein. We are aware of the presumption of a trust where the husband acquired property by means of funds furnished by his wife. *Savage v. Savage,* 163 Or 26, 29-30, 94 P2d 134 (1939).

■ However, that rule is not applied where, as here, the property was acquired in both the husband and wife's names. *Palmer v. Protrka,* 257 Or 23, 476 P2d 185, 189 (1970); *Smith v. Durkee,* 121 Or 86, 90, 254 P 207 (1927); *Carpenter v. Carpenter,* 153 Or 584, 604, 56 P2d 305, 57 P2d 1098, 58 P2d 507, 105 ALR 386 (1936); Annotation, 43 ALR2d 917 (1955).

"The principle upon which resulting trusts are founded, in purchase cases, is that if the considera-

---

[9] As an aside, it is interesting that appellant would prevail, but on a different theory, if this case were in Ohio. Where as here the surviving spouse dies intestate without issue, Ohio's "half and half statute" provides that one-half of the property which came from the predeceased spouse shall pass to that spouse's heirs. *See* Battista v. Feihl, 91 Ohio L Abs 391, 23 Ohio Op 2d 252, 191 NE2d 597 (1963), and Annotation 49 ALR2d 391 (1956). Rather than seeking to affect the property interests from the standpoint of the predeceased spouse (which appellant attempted to do in this case), this statute operates on the estate of the surviving spouse. It seems such a statute would have worked well here.

tion is furnished by one person and the conveyance taken to another the law presumes, initially and rebuttably, from the circumstances, that the latter individual takes the title in trust for the former. The principle fully applies where the consideration is furnished by a wife and the conveyance is taken to her husband.

"The case of a conveyance running to both husband and wife on a consideration supplied by the wife (the situation within the instant title) is, however, quite clearly distinguishable, since if the wife's name appears as grantee on the deed, in a purchase made by herself, she can ordinarily have no purpose in also including her husband's name unless to vest in him such an interest in the property as the conveyance on its face imports. * * *

"* * * [E]verything depends upon the circumstances of the particular case, and upon the actual intent * * *." Annotation, 43 ALR2d 917 (1955) at 918 and 920.

The memorandum opinion of the court as set forth in the respondent's brief states:

"2. That evidence presented by objector does not support the contention that a trust should be impressed on any personal or real property purchased by the parties during their marriage."

■ As previously mentioned the parties concede that the bank accounts and the paper titles to the house and stocks specifically provided for joint ownership in the husband and wife with rights in the survivor. Although the financial transactions were not personally conducted by Clara Topness, they occurred over a period of several years and so presumably she was aware of them. *See Carpenter v. Carpenter,* supra, 153 Or at 597, where *Smith v. Durkee,* supra, was applied even though the purchase was made by the husband.

There is no evidence that Clara Topness desired any other disposition of this property.

■ ■ Any claim of the daughter, Tina, to her father's estate is based on intestacy. ORS 112.085 cuts off any claim thereto, as previously pointed out. Thus the trial court correctly concluded that Howard Topness's estate passed to his heirs at law. Petitioner, the mother of Clara Bose Topness, therefore is entitled to nothing.

Affirmed.